UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LABORERS INTERNATIONAL UNION          **REPORT, RECOMMENDATION**
OF NORTH AMERICA, LOCAL 210,            **AND ORDER**

                Plaintiff,                     08-CV-00907(A)(M)

v.

MCKINNEY DRILLING COMPANY,

                Defendant.
_____

       This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including deciding non-dispositive motions and making recommendations as to dispositive motions [14].[1] Before me are the motion of plaintiff Laborers International Union of North America, Local 210 ("Local 210") to amend its complaint [30], and the motion of defendant McKinney Drilling Company ("McKinney") for dismissal of the original complaint [8].

       For the following reasons, I order that Local 210's motion be DENIED,[2] and I recommend (1) that this action be dismissed for lack of subject matter jurisdiction, and (2) that McKinney's motion to dismiss be DENIED as moot. Furthermore, in accordance with Fed. R.

---

    [1]     Bracketed references are to CM-ECF docket entries.

    [2]     Although McKinney's motion to dismiss is a dispositive motion, "the weight of authority within this Circuit classifies a motion to amend a pleading as a non-dispositive pre-trial motion." Rubin v. Valicenti Advisory Services, Inc., 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007) (Larimer, J.).

Civ. P. ("Rule") 11(c)(3), I order Local 210 and its attorneys to show cause why their conduct has not violated Rule 11(b).

**BACKGROUND**

In this action, Local 210 seeks to recover damages from McKinney for breach of a collective bargaining agreement ("CBA") relating to "caisson" work, which "involves drilling deep foundations for various structures". McKinney's Memorandum of Law [9], p. 3. McKinney moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56 [8]. By Text Order dated April 15, 2009 [23], I ordered the motion to be treated as a motion for summary judgment. Oral argument of that motion was held on May 6, 2009 [28].

Based upon that argument, coupled with my review of the complaint and motion papers, I expressed concerns as to whether Local 210 has standing to maintain this action. *See* May 8, 2009 Decision and Order [29]. Since Local 210 wished to amend the complaint to substitute the allegedly correct version of the CBA for the version annexed to its original complaint, I ordered that "Local 210's submissions demonstrating its standing to pursue this action, along with its motion to amend the complaint, shall be filed by May 20, 2009 . . . . A decision on Summit's pending motion for dismissal/summary judgment will be held in abeyance pending consideration of the matters discussed herein". Id., p. 5.[3]

---

[3] My reference to "Summit" instead of McKinney was a typographical error.

**DISCUSSION AND ANALYSIS**

A.       **Subject Matter Jurisdiction**

McKinney "does not dispute Local 210's standing to maintain this action" (defendant's Memorandum of Law [32], p. 6), and urges me to dismiss Local 210's claim on the merits. However, the parties cannot consent to subject matter jurisdiction which does not in fact exist. "No action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee 456 U.S. 694, 702 (1982). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte* . . . . Notwithstanding any prior proceedings, it is [the court's] obligation to raise the matter of subject matter jurisdiction *whenever* it appears from the pleadings or otherwise that jurisdiction is lacking." Durant, Nichols, Houston, & Cortese-Costa, P.C. v. Dupont, 556 F. 3d 56, 62, 63 (2d Cir. 2009) (emphasis in original).

Since I have questions as to Local 210's standing to maintain this action, I may not consider McKinney's motion to dismiss without first resolving those questions. *See* National Weather Service Employees Organization, Branch 1-18 v. Brown, 18 F. 3d 986, 988 (2d Cir. 1994) ("The district court declined to decide the issue [of the unions' standing] because it had dismissed the Unions' action on summary judgment. The district court should not have proceeded without first addressing the standing issue because standing is a jurisdictional prerequisite based upon the 'case and controversy' requirement of Article III. Absent standing, courts lack power to entertain the proceeding").

"The irreducible constitutional minimum of standing contains three elements: (1) there must be an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Port Washington Teachers' Association v. Board of Education of Port Washington Union Free School District, 478 F. 3d 494, 498 (2d Cir. 2007). In order for a labor union to have standing to sue on behalf of its members, it must show that "its members would otherwise have standing to sue in their own right". National Weather Service, supra, 18 F. 3d at 989.

Local 210 admits that "the at - issue work being performed was not performed by a member of the Union". Proposed Amended Complaint [30-5], ¶29; plaintiff's Memorandum of Law [30-2], p. 9 ("the employee that performed the at - issue drilling work is admittedly not a member of the Laborers"). Not only are its employees not performing the work in question, but Local 210 insists that it is not seeking to have them perform that work. "*Local 210 has not made a claim for the work in question* . . . . Local 210 *does not seek a re-assignment of the drilling work* from the employees presently performing that work to employees who are members of Local 210." Plaintiff's Memorandum of Law [18], p. 5 (emphasis in original); plaintiff's Statement of Disputed Material Facts [26], ¶4 ("the Laborers have made no claim whatsoever for the caisson work performed by McKinney to be assigned to an employee represented by the Laborers").

McKinney characterizes Local 210's refusal to assert a claim to the work in question as a "legal fiction" designed to conceal the fact that this is in reality a jurisdictional

dispute (McKinney's Memorandum of Law [32], p. 6), and asks me to disregard that "fiction" and dismiss Local 210's claims on the merits. However, I refuse to re-characterize Local 210's position, particularly since it insists on maintaining that position in the face of my previously stated concerns as to standing.[4] "Although Plaintiffs' claims might conceivably be cast [differently], a plaintiff is the master of his or her own claims; the Court need not recast Plaintiffs' . . . causes of action." Hendricks v. Dynegy Power Marketing, Inc., 160 F. Supp. 2d 1155, 1156-57 (S.D. Cal. 2001); Caterpillar, Inc. v. Williams, 482 U.S. 386, 398-99 (1987) ("the plaintiff is the master of the complaint").

However, Local 210's concession that the work in question was not performed by its members, and its insistence that it does not seek to have its members perform that work, cannot be ignored in assessing Local 210's standing as to each form of relief which it seeks. "Standing is not dispensed in gross . . . . Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought". Davis v. Federal Election Commission, ___U.S.___, 128 S. Ct. 2759, 2769 (2008); DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).

Local 210 seeks to compel McKinney to "pay the employees who performed the at - issue work the difference, if any, between the wages provided for by the [CBA] and the wages actually paid for the at - issue work" (Complaint [1], p. 8, ¶D; proposed Amended Complaint [30-5], p. 8, ¶D). Having conceded that these employees are not its members, Local

---

[4] "In view of Local 210's admission that it is not seeking to have its members perform the disputed caisson work, it is difficult to understand how Local 210 or its members can claim to be damaged by non-payment of wages or fringe benefits." May 8, 2009 Decision and Order [29], p. 3.

210 has no standing to seek this relief on their behalf. "Generally, litigants must pursue their own legal interests or rights - not those of third parties." Waisome, supra, 999 F. 2d at 714-15.[5]

For example, in Port Washington, supra, the court held that the plaintiff labor union lacked standing to challenge a school district's "policy memorandum" (relating to the reporting of student pregnancies), because its members "face no repercussions from the Policy Memorandum". 478 F. 3d at 500. "We conclude that the plaintiffs have failed to demonstrate actual or imminent harm to themselves and, therefore, have failed to establish the injury in fact necessary to achieve standing." Id. at 501. Similarly, in Waisome v. Port Authority of New York and New Jersey, 999 F. 2d 71, 715 (2d Cir. 1993), the court held that a union lacked standing to object to a plan for distribution of a class action settlement which did not affect its members: "The PBA argues that it has standing because it represents injured members. We disagree. The distribution plan affects only the method of allocating monetary relief among members of the plaintiff class. It does not, therefore, affect union members generally."

Local 210 also seeks to compel McKinney to pay "monetary damages to various trust funds pursuant to Articles XV and XIX of the [CBA]" (Complaint [1], p. 7, ¶A; proposed Amended Complaint [30-5], p. 8, ¶A). However, it fails to explain how it has standing to compel payments to the trust funds. Whereas certain collective bargaining agreements specifically authorize the union to sue the employer for delinquent fund contributions,[6] neither version of the

---

[5] Local 210's argument that the CBA's reference to "'employees covered by this Agreement' should not be limited to Union members, but rather *any employee* that performs work covered by the agreement" (Local 210's Memorandum of Law [30-2], p. 9) (emphasis in original) misses the point, for even if that is true, Local 210 has standing only to act on behalf of its own members.

[6] *See*, *e.g.*, Smith v. Candler Coffee Corp., 1996 WL 434554, *1 (S.D.N.Y. 1996) ("The CBA authorizes both the union and the fund trustees to sue an employer in the event of default. (*Id.* Art. 35))."

CBA in this case contains such an authorization. In fact, Article XV, §6 of each version states that the funds "shall be jointly administered by Trustees", and that "the concurrences of one employer-designated Trustee and one Union-designated Trustee of any fund shall be necessary for the approval of any action taken by such Trustees". Nowhere does Local 210 allege that the fund trustees have authorized it to sue for recovery of allegedly delinquent payments to the funds, or explain how it would have standing to do so even if they had. *See* Reade v. Allied Trades Council, 2005 WL 3038645, *3 (S.D.N.Y. 2005) (holding that under ERISA, a "union lacks standing to sue employers in federal court for unpaid benefit fund contributions"); Toussaint v. J.J. Weiser & Co., 2005 WL 356834, *6 (S.D.N.Y. 2005).

Moreover, the grievance award which allegedly compels payment to the funds (Complaint [1], Ex. C and proposed Amended Complaint [30-5], Ex. C) involved work performed by an employee (J. Rosier) who is admittedly not a member of Local 210, so any relief in that regard would not benefit Local 210 in any event.[7]

The only form of relief which Local 210 *does* claim standing to seek is its proposed claim for agency fees from McKinney. "The addition of a demand for agency fees as damages for Defendant's breach of the contract clearly bestows standing to bring this action upon Local 210." Lichtenthal Affirmation [35], ¶26.[8] In seeking leave to amend its complaint to

---

[7] Although not strictly necessary for my determination, I also note that during oral argument on May 6, 2009, the parties acknowledged that the grievance involved a claim for fringe benefits. Such claims are specifically *exempted* from the grievance/arbitration procedure. *See* CBA, Art. XVII, §1(a) ("Should any dispute arise . . . *other than* those relating to the Employer's wage, fringe benefit, and dues check-off obligations . . . the Union shall have the sole jurisdiction to decide the dispute") (emphasis added).

[8] While Local 210 suggests that McKinney would be obligated to pay union dues as an alternative to uniform initiation and agency fees, it admits that it is not entitled to dues in this case, and seeks only initiation and agency fees. Proposed Amended Complaint [30-5], ¶29.

-7-

assert this claim, Local 210 argues that "Article VI of the [CBA] requires that McKinney pay 'uniform initiation and agency fees' in the event that any employees performing work covered by said agreement not be members of the Laborers . . . . Consequently, the Laborers have been denied uniform initiation and agency fees for the performance of certain drilling work ". Local 210's Memorandum of Law [30-2], p. 8; proposed Amended Complaint [30-5], ¶¶ 14, 29; p. 8, ¶A; p. 9, ¶E.

Therefore, I must decide whether amendment should be allowed.


**B.     Amendment of the Complaint**

In seeking leave to amend its complaint, Local 210 notes the well-settled rule that "in the absence of any apparent or declared reason - such as undue delay, bad faith . . . futility of amendment, etc. - the leave sought should . . . be 'freely given'". Local 210's Memorandum of Law [30-2], *quoting* Foman v. Davis, 371 U.S. 178, 182 (1962). It then argues that "as the at-issue agreement expressly requires that McKinney remit initiation fees to the Union, the addition of such a demand for damages is not made in bad faith or with dilatory motive". Local 210's Memorandum, supra, p. 8.

If Local 210 had accurately characterized the language of the CBA, I would be inclined to agree that its belated assertion of this claim was "not made in bad faith or with dilatory motive". However, having reviewed the actual language of the CBA,[9] I question how Local 210 can assert this claim in good faith. Article VI of the CBA clearly does *not* require

---

[9]     Although Local 210 seeks to substitute a different version of the CBA for the version attached to its original complaint, the relevant language of both versions is identical.

McKinney to pay initiation and agency fees to Local 210. Article VI, §1 imposes that obligation upon *employees*, not McKinney - and only upon those employees who do not "become or remain members in good standing of the Union". McKinney's only obligation is to "discharge, upon receiving seven (7) days' written notice, signed by the Secretary - Treasurer of the Union, any employee with respect to whom such notice may state that such employee has failed to tender uniform initiation and agency fees uniformly required, provided that said written notice is also provided to said employee and that said employee has not paid the required initiation and agency fees within seven (7) days of the date of the written notice." Article VI, §2. Local 210 does not even allege that such notice has been given.

Since the CBA makes clear that Local 210 would never be entitled to payment of initiation and agency fees from McKinney, I need give no weight to Local 210's claim that it is. I "need not accept as true an allegation that is contradicted by documents on which the complaint relies". In re Bristol-Myers Squibb Securities Litigation, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004); Microtel Franchise and Development Corp. v. Country Inn Hotel, 923 F. Supp. 415, 419 (W.D.N.Y. 1996) (Larimer, J.) ("Claims may be resolved in a motion to dismiss, if the claims under which the plaintiff seeks relief are barred . . . by the unambiguous terms of a contract attached to the pleadings").

Although leave to amend should be freely granted where warranted, "granting leave to amend is not . . . automatic. Courts have specifically denied such a motion where the amended pleading could be defeated by a motion to dismiss . . . or where there was no merit to the proposed amendments." Turner v. Niagara Frontier Transportation Authority, 748 F. Supp. 80, 85 (W.D.N.Y.1990) (Curtin, J.). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ___U.S.___, 129 S. Ct. 1937, 1949 (2009).

Since the actual language of the CBA (as opposed to Local 210's mischaracterization of that language) does not allow me to "draw the reasonable inference that defendant is liable for the misconduct alleged", Ashcroft, supra, I conclude that the amended complaint could not survive a motion to dismiss. Therefore, the motion for leave to amend the complaint is denied.

**C.   McKinney's Motion to Dismiss**

Having concluded that I lack subject matter jurisdiction over this action, I recommend that McKinney's motion to dismiss the complaint [8], which I converted to a motion for summary judgment [23], be denied as moot. *See* Wertz v. LPS National Flood, L.P. 2009 WL 1098093, *6 (E.D. Tenn. 2009) ("The court will DENY Defendant's motion to dismiss on the merits as moot due to this court's perceived lack of subject matter jurisdiction over this matter").

**D.   Are Sanctions Warranted?**

I am reluctant to sanction a party or its attorneys for advocating a position which is at least arguable, even if ultimately unpersuasive. However, I have serious questions as to whether Local 210's position in this case was even arguable.

-10-

I raised those concerns in my May 8, 2009 Decision and Order [29], and invited Local 210 to explain how it has standing to seek an award of wages or fringe benefits on behalf of employees who are not its members. Instead of doing so - or withdrawing those claims for relief - Local 210 sought leave to amend its complaint to reassert those same claims, along with a new "demand for agency fees as damages for Defendant's breach of the contract [which] clearly bestows standing to bring this action upon Local 210." Lichtenthal Affirmation [35], ¶26.

Even if Local 210 could be said to have standing to assert a claim against McKinney for initiation/agency fees, it has not suggested a basis for its standing as to the other forms of relief which it seeks (wages on behalf of employees who are not its members, and fringe benefit payments to the trust funds). As stated previously, "standing is not dispensed in gross". Davis, supra, 128 S. Ct. at 2769. Moreover, Local 210's claim of standing to seek recovery of initiation/agency fees from McKinney is predicated upon what appears to be a significant mischaracterization of Article VI of the CBA.

Although there may be an arguable justification for Local 210's position in this case, it is not readily apparent to me. Therefore, pursuant to Rule 11(c)(3), I am ordering Local 210, John Lichtenthal, and Lipsitz Green Scime Cambria LLP to show cause on or before July 10, 2009 why the following conduct has not violated Rule 11(b):

1 - Asserting claims for wages or fringe benefits on behalf of employees who are not Local 210 members;

2 - Asserting a claim for benefit payments to trust funds;

3 - Failing to withdraw those claims when its lack of standing to assert them was pointed out by the court [29]; and

4 - Arguing that the CBA requires McKinney to pay initiation/agency fees to Local 210.

## CONCLUSION

For these reasons, I order that Local 210's motion for leave to amend its complaint [30] be DENIED, and I recommend (1) that this action be DISMISSED for lack of subject matter jurisdiction, and (2) that McKinney's motion to dismiss [8] be DENIED as moot. Pursuant to Rule 11(c)(3), I also order Local 210 and its attorneys to show cause on order before July 10, 2009 why the conduct specified at page 12 of this opinion (items 1 - 4 above) has not violated Rule 11(b). Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3). If objections are filed by Local 210, then the deadline for submissions concerning Rule 11 compliance shall be stayed pending further order of this court.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge

in the first instance.  See e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

 SO ORDERED

DATED:	June 24, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge