UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LOCAL UNION NO. 210, LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA, AFL-CIO,

                Plaintiff,

      v.                                    DECISION AND ORDER
                                        08-CV-907A

McKINNEY DRILLING COMPANY,

                Defendant.

## INTRODUCTION

Plaintiff Laborers International Union of North America, Local 210 ("Local 210") filed suit against Defendant McKinney Drilling Company ("McKinney") on December 11, 2008, as an action for breach of the collective bargaining agreement between the two parties ("Local 210 CBA"). Defendant McKinney filed a motion to dismiss the complaint on February 2, 2009.

The matter was referred to Magistrate Judge McCarthy pursuant to 28 U.S.C. § 636. Magistrate Judge McCarthy converted McKinney's motion into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Thereafter, Local 210 filed a motion to amend the complaint. On June 24, 2009, Magistrate Judge McCarthy filed a report and recommendation, recommending that the matter be

dismissed for lack of standing, that the motion to dismiss be denied as moot, and that the motion for leave to amend be denied.

Local 210 filed objections to the report and recommendation and McKinney filed a response. On September 17, 2009, the Court held limited oral argument on the objections. For the reasons stated, the Court declines to adopt the report and recommendation, grants summary judgment in favor of McKinney, and denies Local 210's motion to amend as futile.

## **BACKGROUND**

McKinney is a signatory to a collective bargaining agreement with Local 210. McKinney is also a signatory to a collective bargaining agreement with the United Brotherhood of Carpenters and Joiners of America, Local 289 ("Carpenters' Union"). McKinney is bound by the terms of both agreements. Since early 2008, Local 210 and the Carpenters' Union have been in a jurisdictional dispute over which union has jurisdiction to perform certain caisson work involving the use of pipes.

Caisson work involves drilling deep foundations for various structures. This is done by drilling a hole with an auger 35 to 55 feet into the ground and filling the hole with concrete and rebar to create a solid foundation. Generally, when McKinney bids on jobs that involve caisson work, soil borings have already been taken from the job site. These soil borings indicate what type of soil, rock or other material will need to be drilled through. If the soil borings show that the soil is soft, wet, or otherwise unstable, the caisson work is performed by drilling a steel pipe into the ground as the soil is being

drilled to maintain the stability of the walls of the hole so that the drilling can be completed to the appropriate depth without collapse.

In situations where a pipe needs to be used while drilling a caisson, McKinney has always assigned the disputed work to the Carpenters. On the other hand, if the soil borings indicate that the ground is hard and stable, no pipe needs to be used to ensure the stability of the hole. Basically, that work consists of drilling a hole and filling it with concrete. In situations where no pipe is used, McKinney has always used Laborers Local 210 to complete the task.

This jurisdictional dispute began in January 2008, when McKinney was awarded two separate jobs involving drilling caissons at the Ford Stamping Plant in Woodlawn, New York, and the NRG Energy Huntley Plant in Tonawanda, New York. McKinney determined that the soil at these two locations would require the use of steel pipes for reinforcement, and awarded the work at both locations to the Carpenters' Union.

On or about January 29, 2008, Sam Capitano, business agent for Local 210, contacted McKinney to express his dissatisfaction with the use of the Carpenters' Union's members to complete the work at the Huntley and Ford Plants. When the matter could not be resolved, Local 210 sought to arbitrate the issue of whether the work should be awarded to Local 210.

McKinney then commenced a proceeding in this Court seeking a permanent stay of arbitration. *See Constr. Industry Employers Association and McKinney Drilling Company v. Local 210*, 08-CV-260A (hereinafter *"McKinney I"*). Local 210 opposed the stay and argued that: (1) the dispute was not jurisdictional in nature; and (2) an

3

arbitrator, not this Court, should decide the issue of whether the dispute at issue was jurisdictional.

On August 20, 2008, this Court issued a Decision and Order granting McKinney's request for a permanent stay of arbitration upon finding that the dispute was jurisdictional in nature and that under the relevant collective bargaining agreements, caissons work involving steel pipes belonged to the Carpenters' Union. *See* Decision and Order in *McKinney I,* Dkt. 13, at 11.

Local 210 appealed this Court's decision in *McKinney I* and on September 11, 2009, the Second Circuit Court of Appeals affirmed this Court's ruling. *See Constr. Industry Employers Association and McKinney Drilling Company v. Local 210,* 08-4647-cv (2d Cir. Sept. 11, 2009).

In the meantime, while *McKinney I* was proceeding through this Court, McKinney awarded other caisson work at a different construction site–the Colden Bridges Project - to the Carpenters' Union. Like the worked performed at the Huntley and Ford Plants, the work performed at the Colden Bridges Project involved caisson work with steel pipes. Therefore, pursuant to its normal practice, that work was assigned to the Carpenters' Union.

In June 2008, Local 210 Business Agent Samuel Capitano filed a grievance alleging that McKinney was in violation of the Local 210 CBA because it had failed to "apply the terms and conditions" of the CBA with regard to McKinney employees working at the Colden Bridges Project. *See* Compl. at Exh. B (Grievance). McKinney

denied the grievance and argued that the matter was a jurisdictional dispute that was not subject to the CBA.

On July 3, 2008, Local 210 issued a decision regarding the grievance, finding McKinney had breached the terms of the Local 210 CBA by failing to pay wages and fringe benefits for the work performed by employees at the Colden Bridges Project. Local 210 then commenced this action seeking to confirm that grievance and for an order compelling McKinney to make contributions to Local 210's trust fund based upon the number of hours worked on that project by those employees.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 636, this Court must perform a *de novo* review of a Magistrate Judge's report and recommendation. Upon such review, the Court declines to adopt Magistrate Judge McCarthy's recommendation that Local 210 lacks standing to bring this action. Instead, the Court finds that summary judgment should be granted in favor of defendant McKinney.[1]

Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence to defeat the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). All justifiable

---

[1] The Court finds no procedural impediment to granting the motion for summary judgment as the parties were notified by the Magistrate Judge that he intended to treat the motion to dismiss as a motion for summary judgment.

inferences must be drawn from the underlying facts and must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 587 (1986). However, a party opposing a motion for summary judgment may not simply rest on denials in its pleadings but must demonstrate the existence of a genuine issue of material fact. *Id.*

At issue in this case is Local 210's claim that McKinney breached the Local 210 CBA by failing to hire Local 210 members and pay wages and benefits required under that CBA for work performed at the Colden Bridges Project. Local 210 alleges that the work performed at the Colden Bridges Project involved "rock or drilling machine operations" which falls within the scope of the Local 210 CBA and therefore Local 210's trust fund is entitled to have contributions made based upon the number of hours performed for that work. McKinney on the other hand, asserts that the Colden Bridges Project involved caissons work that fell within the scope of its CBA with the Carpenters' Union. Specifically, McKinney cites Article IV of the of the Carpenters' Union CBA which provides:

> 3. Drive and brace piling for caisson work. Erect all concrete forms down from the cellar bottom and column base in cellar bottom, where such forms are directly attached to form a part of the capping or heading of piles or caissons. Erect all necessary shoring including ties and guardrails on elevated trestles. In construction of wood trestles, good faith efforts to procure materials offsite at a UBC mill will be undertaken. All pile driving of wood, steel and concrete piles and sheeting pile for subway, sewer, tunnel and other engineering construction, also extraction of all piles, also all bracing work listed in all subsections shall be the work of pile drivers.
>
> 10. Installation of Caissons, Piling or Soldier Pile - A minimum of one (1) pile driver shall be placed with each drilling rig, when such rig is utilized for the installation of piling or caissons. To exclude drilling when temporary casings or permanent castings are not used.

*See* Carpenters' Union CBA, Dkt. 11-3, Article IV, at ¶ ¶ 6, 10.

According to McKinney, the "rock or drilling machine operations" work referred to in the Local 210 CBA "involves the drilling of a two inch core sampling, or borings, to test the soil or to place blasting equipment within a hole. It has nothing to do with the drilling of a hole to establish a foundation and pouring concrete into the hole, *i.e.* caissons work." *See* Dkt. 9, at 7.

It is undisputed that the caissons work that was performed at the Colden Bridges Project was performed by members of the Carpenters' Union. Yet, Local 210 claims that such work fell within the scope of Local 210's CBA. As Local 210 well knows, this situation involves a "classic jurisdictional dispute . . . because it concerns the competing claims of two unions seeking to perform the same work for an employer." *See McKinney I*, Second Circuit's Decision, at 6-7. Indeed, if the Court were to agree with Local 210's position, McKinney would be "placed in a situation where [it] finds it impossible to secure the benefits of stability from either of [the collective bargaining agreements], not because [it] refuses to satisfy the unions, but because the situation is such that it cannot satisfy them.'" *Id.* (quoting *N.L.R.B. v. Radio & Television Broad, Eng'rs Union*, 364 U.S. 573, 582 (1961)).

As this Court has previously found in *McKinney I*, caissons work involving the use of steel pipes falls within the scope of the Carpenters' Union CBA. Indeed, both this Court and the Second Circuit observed in *McKinney I* that such work has *always* been assigned to the Carpenters' Union and Local 210 could produce no evidence to support its claim that it had performed steel pipe caissons work in the past. To the

7

extent that Local 210 seeks to challenge that determination, it is barred from doing so by principles of collateral estoppel.

Local 210's attempts to avoid the inevitable determination that its grievance involves a jurisdictional dispute are unavailing. Local 210 asserts in its complaint:

> Local 210's grievance did not seek to change a work assignment from one group of employees to another group of employees. Rather, since the work is covered by the [Local 210 CBA], the grievance sought to apply and enforce [the Local 210 CBA] . . . .

See Compl. at ¶ 16. By claiming that it is entitled to be paid for work that was performed by members of another union under that union's CBA, Local 210 is indeed raising a jurisdictional dispute. Local 210's thinly-veiled effort to disguise what is clearly a jurisdictional dispute is rejected.

Furthermore, as this Court has already determined *McKinney I*, Local 210's claim of entitlement to work that is subject to a jurisdictional dispute that is not subject to arbitration. *See McKinney I*, at 13 (holding that under the unequivocal language of the Local 210 CBA, a jurisdictional dispute is not subject to arbitration).

## **CONCLUSION**

Because the complaint at issue clearly alleges a jurisdictional dispute that is not subject to arbitration, the Court finds that summary judgment should be granted in favor of McKinney. Furthermore, Local 210's motion for leave to amend the complaint is denied as futile.

The Clerk of the Court shall take all steps necessary to close this case.

SO ORDERED.

                                         *s/ Richard J. Arcara*
                                         HONORABLE RICHARD J. ARCARA
                                         CHIEF JUDGE
                                         UNITED STATES DISTRICT COURT

DATED: November 10, 2009